UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ESTA M. DELANEY, ALBERT S. DELANEY III, SHANNON DELANEY PATIN, REBECCA DELANEY McCANDLESS, DAVID K. DELANEY, PATRICK J. DELANEY, and LAUREN DELANEY CAMARDELLE | * * * * * * * * | CIVIL ACTION NO. 2:10-cv-00001 SECTION "I" JUDGE LANCE M. AFRICK DIVISION (3) MAGISTRATE DANIEL E. KNOWLES, III |
| PLAINTIFFS, | * * | |
| V. | * * | |
| UNION PACIFIC RAILROAD | * * | |
| DEFENDANT. | * | |

## UNION PACIFIC RAILROAD COMPANY'S
## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

This Memorandum of points and authorities is submitted by defendant, Union Pacific Railroad Company ("Union Pacific"), in support of its Motion for Summary Judgment seeking dismissal of all plaintiffs' claims to damages arising before January 2, 2009, one year before the filing of plaintiffs' Complaint on January 2, 2010 [R. Doc. No. 1]. Because any claims to damages occurring due to alleged flooding incidents before January 2, 2009 are clearly

prescribed, only damages claims that plaintiffs prove arose after January 2, 2009 should be considered by the Court.

**I.     Background Facts**

   *A.     <u>The Delaney Property.</u>*

Plaintiff Esta M. Delaney and her six children, plaintiffs Albert S. Delaney III, Shannon Delaney Patin, Rebecca Delaney McCandless, David K. Delaney, Patrick J. Delaney, and Lauren Delaney Carmadelle, own a piece of property at 172 Herman Street in Waggaman, Louisiana ("Delaney Property"). Mrs. Delaney and her late husband purchased the property in 1959, and subsequently built their family home there. Complaint [R. Doc. No. 1], ¶ 3(A); *see also* Deposition of Esta Delaney, Exhibit A, p. 24-25. Mrs. Esta Delaney still lives on the property, and each of her adult children has an ownership interest in the property derived from their father's estate. Complaint, [R. Doc. No. 1] ¶ 3(B).

The Delaney Property lies adjacent to and north of Union Pacific's railroad right-of-way, purchased in the late 1800's. The right of way consists of four parallel railroad tracks – three immediately south of Mrs. Delaney's property and one slightly further south separated from the other three by several feet of open space. There are two culverts that run underneath the railroad tracks to the south, where drainage is carried to the Glendella canal. Complaint, ¶ 3(D)(E). Separating the Delaney property from the Union Pacific railroad tracks is a ditch on Union Pacific property, and the Delaney's chain link fence on the property line.

   *B.     <u>The Delaney's Claim Flooding of the Property Began in the 1960's -70's.</u>*

The Delaney's claim that the Delaney Property has been flooding since at least the 1970's due to the overtopping of the railroad ditch, which they claim is a result of Union Pacific's

failure to adequately design the storm water drainage ditch and culverts. Complaint, Count I, ¶ A-C. Mrs. Esta Delaney testified in her deposition as follows:

> **Question:** Did water come up into your yard in the '70's?
>
> **Mrs. Delaney**: It did. . . . In the backyard --with heavy rain. [. . . .]
>
> **Question:** When the backyard got water in it with a heavy rain, where did that water come from?
>
> **Mrs. Delaney:** Well, the ditch could not hold all of it to get under the culvert that they had.
>
> Esta Delaney Depo., Ex. A, p. 33-34
>
> *********
>
> **Question:** And you said that this occurs every time there's a heavy rain?
>
> **Mrs. Delaney**: Well it has to be a pretty heavy rain. Not just a normal rain. I haven't had that happen for a long time. It's not very often that it does do that.
>
> **Question:** Okay. And has it been doing that for all these years since you've owned the house?
>
> **Mrs. Delaney**: Oh, yes.
>
> **Question:** So the water has backed up on to your property in a heavy rain since you bought the house?
>
> **Mrs. Delaney**: Well, when they added a new track near my property that's when it -- the culvert couldn't handle all that water, and it would overflow into my yard. My backyard and all.
>
> **Question:** Okay. I think earlier you said you thought that the additional tracks were added in the '60's?
>
> **Mrs. Delaney**: I believe so.
>
> **Question:** Okay. So from the '60's forward, whenever there's been [sic] a heavy rain, a fairly significant rain, water would accumulate into the ditch and flow into your backyard?
>
> **Mrs. Delaney**: And also the street.

Esta Delaney Depo., Ex. A, p. 39-40. Each of the Delaney children confirmed in their depositions that the property has been flooding for decades, most of them recalling that the flooding began in 1970's. Deposition of Albert Delaney, Ex. B, p. 26 (recalling flooding from ditch in 1978); Deposition of Lauren Carmadelle, Ex. C, p. 11 (recalling flooding in 1978); Deposition of Shannon Patin, Ex. D, p. 13 (recalling flooding beginning in the 1970's); Deposition of David Delaney, Ex. E, p. 8 (recalling becoming aware of the flooding problems in the 1990's); Deposition of Patrick Delaney, Ex. F, p. 10, 32 (recalling flooding in 1978, and generally that the flooding began in the mid to late 1970's); Deposition of Rebecca Delaney, Ex. G, p. 11 (recalling flooding between 1977 and 1980).

While the Delaney's claim that water regularly enters their side and back yard, the only time that the Delaney home actually flooded was in May 1995, when there was an enormous flood event that flooded many homes in and around Waggaman and Jefferson Parish.[1] Esta Delaney Depo., Ex. A, p. 46; 30(b)(6) Deposition of the Consolidated Drainage Districts of the Parish of Jefferson – Drainage District No. 2, through testimony of Larry Palmisano, Ex. H, p. 63-64. In response to the May 1995 flood, Mrs. Delaney sent a letter to the Jefferson Parish Director of Drainage complaining that the culverts under the railroad track adjacent to her property were inadequate and drainage in the area needed to be improved. *See* Letter from Mrs. Esta Delaney to Pratt Reddy, Jefferson Parish Director of Drainage, dated May 24, 1995, attached hereto as Exhibit I. This letter evidences the fact that more than fifteen years ago, Mrs.

---

[1] The Delaney's also claim that a closed in carport, sitting several inches lower than the home, flooded in 1978. Albert Delaney Depo., Ex. B, p. 26-27.

Delaney was not only aware that her property flooded, but also believed that the flooding was caused by inadequate culverts under the railroad tracks.[2]

    C. *Damages Claimed by the Delaney's.*

The Delaney's allege that the repeated overtopping of the railroad ditch has caused erosion to their property, subsidence of their yard, the collapse of the fence between the properties, damage to a shed, and other miscellaneous damages. *See e.g.* Deposition of Lauren Carmadelle, Ex. C, p. 29-30. They also claim that Mrs. Delaney has suffered emotional distress from the many years of dealing with the flooding problem and because she worries that her home will flood "as it did in May 1995." Complaint ¶ V, W.

Union Pacific seeks summary judgment that all of the Delaney's claims to damages arising from flooding that occurred outside of the one year period before the filing of the Complaint are prescribed.

**II.** **Law and Analysis**

    A. *Summary Judgment Standard.*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Further, the issue of whether a plaintiff's claim has prescribed is properly brought in a motion for summary judgment. *See Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir.

---

[2] The Delaney children have been aware of the repeated flooding (including the May 1995 flood) because some of the children lived at home as adults for a period of time and others speak to their mother whenever there is a significant rain event and she is worried about flooding. *See e.g.* Albert Delaney Depo., Ex. B, p. 21; Deposition of David Delaney, Ex. E, p. 20.

2009); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 486-87 (5th Cir. 2009). Here, the Delaney's pleadings and deposition testimony demonstrate that the Delaney's had actual notice of their claim more than thirty years ago.

### B. *Prescription of Property Damage Claims and Delictual Actions.*

A prescriptive statute's primary purpose is to protect a defendant from stale claims and from the loss of relevant proof.[3] *Compeaux v. Plaisance Inspection & Enter., Inc.*, 639 So.2d 434, 436-37 (La. App. 1st Cir. 1994). Thus, prescription begins to run when the plaintiff knew or should have known of the existence of facts that would have enabled him to state a cause of action. *Harvey v. Dixie Graphics, Inc., et al.*, 593 So.2d 351, 354 (La. 1992); *Jumonville v. King*, 870 So.2d 462, 465 (La. App. 2 Cir. 2004). The standard imposed is that of a reasonable person; thus, any plaintiff who is aware of facts that would place a reasonable person on notice that a cause of action has arisen shall be held subject to the running of prescription by virtue of such knowledge. *See Jumonville*, 870 So.2d at 465.

Since the Delaney's are alleging damage to their property, denial of the full enjoyment of their property, and mental anguish, their actions are covered by Louisiana Civil Code articles 3492 and 3493. Delictual actions are subject to a liberative prescription of one year and that prescription begins to run from the day the injury or damage is sustained. La. Civ. Code art. 3492. Actions involving damage to immovable property are also subject to a one year prescriptive period, which begins to run from the day that the owner acquired the immovable or

---

[3] The loss of relevant proof is particularly germane in this case, where plaintiffs make allegations spanning more than forty years. Many of the individuals from Union Pacific (and its predecessor railroads) and/or Jefferson Parish who at one time may have had relevant information regarding the issues at hand have long since died or retired.

when the plaintiff should have acquired knowledge of the damage. La. Civ. Code art. 3493. Thus, all of the Delaney's claims are governed by a one year prescriptive period.

Mrs. Delaney and each of her six children knew that the Delaney Property flooded allegedly as a result of the condition of the ditch and culverts as early as the 1970's. Under Article 3493, the prescriptive period on each instance of flooding began as soon as the Delaney's knew of the flooding – and there is simply no argument that the Delaney's were not aware many years ago of sufficient facts to put them on notice of their claim. Accordingly, as to each of the Delaney's claims to damages – various sorts of property damage, loss of use and enjoyment, diminished value of the land, mental anguish and emotional distress (related to Mrs. Esta Delaney only) – their claim must be limited strictly to those damages arising in the year before the filing of the Delaney's Complaint, and the Delaney's must prove that those damages occurred in that one year period. All other damage claims are prescribed.

C. *Repeated Instances of Flooding Do Not Constitute a Continuous Tort.*

The Delaney's attorney represented to the Court in Chambers at the recent Status Conference that he believes that the alleged flooding of the Delaney Property constitutes a continuous tort, which would toll the running of prescription. Case law simply does not support this theory. It is well established that repeated instances of flooding do not constitute a continuous tort. *Pracht v. City of Shreveport*, 830 So.2d 546 (La. App. 2 Cir. 2002); *Roberts v. Murphy Oil Corp.*, 577 So.2d 308 (La. App. 4 Cir. 1991); *Carbo v. Hart*, 459 So.2d 1228 (La. App. 1 Cir. 1984), *writ denied*, 462 So.2d 654 (La. 1985); *see also* 4 La. Civ. L. Treatise § 21 ("Repeated instances of flooding are separate and distinct events rather than a continuous tort . . .").

The facts presented in the *Pracht* case are particularly instructive as they are very similar to those alleged by the Delaney's. There, a concrete-lined drainage canal, constructed, owned and maintained by the City of Shreveport, ran along the back and one side of the plaintiff's immovable property, which he purchased in 1991. After the purchase of the property, one of the two structures on the plaintiff's property flooded yearly due to overflowing of the drainage canal. On four occasions, the flooding was severe enough to flood the main structure. Consequently, both the plaintiff's movable and immovable property were damaged: soil under the property eroded away, damaging the foundation of the buildings and the parking lot; separating the walls in the buildings; and collapsing areas of the parking lot. These damages occurred between 1991 and 2001, when plaintiff sued. *Pracht*, 830 So.2d at 547-548.

The City of Shreveport successfully moved for summary judgment based on prescription. The plaintiff attempted to save his suit by arguing, in part, that, because his property flooded at least yearly, causing additional damage, a continuous tort had occurred. The court rejected that argument, reasoning:

> We do not believe that separate instances of flooding caused by the negligent maintenance of a drainage canal constitutes such a continuous tort. Since we can reasonably rely on the fact that it will always rain (hence the need for drainage canals), plaintiffs' [sic] proposition would have the result of postponing the running of prescription in perpetuity. For the flooding damage will never abate until either it stops raining or the necessary repairs/modifications are made to the drainage canal to prevent the flooding.

*Id.* at 551.

Here, as in *Pracht*, the Delaney's allege that Union Pacific's negligent construction and maintenance of the drainage ditch and culverts has caused the separate instances of flooding described in their Complaint and depositions. These separate instances do not constitute a

continuing tort. A continuing tort is occasioned by unlawful *acts*. It is not, as here, the continuation of the *ill effects* of an original, wrongful act (here, allegedly improper design or construction of the ditch and/or culverts). *See Crump v. Sabine River Authority*, 737 So.2d 720, 727-728 (La. 1999). As the *Pracht* court aptly noted, classifying continuing ill effects (*i.e.*, the repeated instances of flooding) as a continuing tort would improperly allow prescription to run in perpetuity.

### III. Conclusion

For the foregoing reasons, Union Pacific Railroad Company's Motion for Summary Judgment should be granted, and all claims to damages caused by alleged flooding to the Delaney Property occurring before January 2, 2009 be dismissed with prejudice.

Respectfully submitted,

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

BY  /s/ Kathlyn G. Perez
William H. Howard, III (Bar No. 7025)
Kathlyn G. Perez (Bar No. 30668)
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5275
Facsimile: (504) 636-3975
whoward@bakerdonelson.com
kperez@bakerdonelson.com

COUNSEL FOR UNION PACIFIC RAILROAD COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of January, 2011, I electronically filed the foregoing with the Clerk of the Court using ECF system which sent notification of such filing to:

    Laurence Cohen (lakeviewlaw@gmail.com)
    COUNSEL FOR ESTA M. DELANEY, ET AL.

    Guice Anthony Giambrone, III (ggiambrone@bluewilliams.com)
    Craig R. Watson (cwatson@bluewilliams.com)
    COUNSEL FOR THE CONSOLIDATED DRAINAGE DISTRICTS OF THE
    PARISH OF JEFFERSON – DRAINAGE DISTRICT NO. 2

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-ECF participants:

    NONE

This the 27th day of January, 2011.

                                            /s/Kathlyn G. Perez
                                            KATHLYN G. PEREZ