UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ESTA M. DELANEY, ET AL.**                                              **CIVIL ACTION**

**VERSUS**                                                                    **No. 10-1**

**UNION PACIFIC RAILROAD COMPANY**                              **SECTION I**

### ORDER AND REASONS

Before the Court is a motion[1] for partial summary judgment filed by defendant, Union Pacific Railroad Company ("Union Pacific"). Plaintiffs, Esta M. Delaney, Albert S. Delaney III, Shannon Delaney Patin, Rebecca Delaney McCandless, David. K. Delaney, Patrick J. Delaney, and Lauren Delaney Camardelle (the "Delaneys"), oppose[2] the motion. For the following reasons, defendant's motion for partial summary judgment is **GRANTED**.

### *BACKGROUND*

Plaintiffs own a piece of property at 172 Herman Street in Waggaman, Louisiana.[3] Esta M. Delaney and her late husband purchased the property in 1959, and subsequently built their family home there.[4] Esta M. Delaney still lives on the property and each of her adult children has an ownership interest in the property derived from their father's estate.[5]

---

[1] R. Doc. No. 65. Since the relief defendant seeks only addresses a portion of plaintiffs' claims, the Court construes defendant's motion as a motion for partial summary judgment.
[2] R. Doc. No. 70.
[3] R. Doc. No. 1, p.3.
[4] Id.
[5] Id. at p.4.

1

Plaintiffs' property lies adjacent to and north of Union Pacific's railroad right-of-way, purchased in the late 1800's.[6]  The right-of-way consists of four parallel railroad tracks—three immediately south of plaintiffs' property and one slightly farther south separated from the other three by several feet of open space.[7]  Union Pacific owns a drainage ditch running parallel to the tracks.[8]  Union Pacific also owns two culverts underneath the tracks, where drainage is carried to the Glendalla canal.[9]

Plaintiffs' complaint alleges that Union Pacific's failure to adequately design and maintain its stormwater drainage ditch and culverts has resulted in overflowing stormwater that routinely floods and erodes their property.[10]  Union Pacific has moved for partial summary judgment on the ground that all of plaintiffs' claims for damages arising from flooding that occurred outside of the one-year period before the filing of the complaint are prescribed.  In opposition, plaintiffs assert that the one-year prescriptive period does not apply because Union Pacific's negligence constitutes a continuing tort.

## STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need

---

[6] R. Doc. No. 65-1, p.2.
[7] Id.
[8] R. Doc. No. 1, p.4.
[9] Id.; R. Doc. No. 65-1, p.2.
[10] R. Doc. No. 1, p.9.

not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

### *DISCUSSION*

The prescriptive period applicable to a case involving allegations of tortious conduct causing damage to immovable property is the one-year liberative prescription of La. Civ. Code Ann. art. 3493 (1983). See Hogg v. Chevron USA, Inc., 45 So.3d 991, 997 (La. 2010).  Pursuant to this provision, the one-year period "commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La. Civ. Code. Ann. art. 3493 (1983).  "In cases involving damage to immovable property based on LSA-C.C. art.

3

3493, Louisiana jurisprudence draws a distinction between damages caused by continuous, and those caused by discontinuous, operating causes[.]" Hogg, 45 So.3d at 1002-03. The revision comments to art. 3493 explain:

> When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. See South Central Bell Telephone Co. v. Texaco, 418 So.2d 531 (La. 1982), and cases cited therein. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage. See A.N. Yiannopoulos, Predial Servitudes, § 63 (1982).

Id. at 1003 (quoting Revision Comments (c) to La. Civ. Code. Ann. art. 3493 (1983)).

The Louisiana Supreme Court has further explained the distinction as:

> "[A] continuing tort is occasioned by [continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act." Further, we point out that "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury." The inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts.

Id. (quoting Crump v. Sabine River Auth., 737 So.2d 720, 728-29 (La. 1999). "When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." South Central Bell Tel. Co. v. Texaco, Inc., 418 So.2d 531, 533 (La. 1982).

Plaintiffs argue that the multiple instances of flooding that allegedly resulted in damage to plaintiffs' property constitute one continuing tort as opposed to several discontinuous torts. However, this argument is inapposite to the holdings of other Louisiana cases that have addressed this issue. In Pracht v. City of Shreveport, 830 So.2d 546 (La. Ct. App. 2002), the

4

plaintiff alleged that his immovable property suffered flooding damage as a result of the city's failure to properly design, construct and maintain a drainage canal. Id. at 550. In considering the defendant's affirmative defense of prescription, the court stated:

> We do not believe that separate instances of flooding caused by the negligent maintenance of a drainage canal constitutes such a continuous tort. Since we can reasonably rely on the fact that it will always rain (hence the need for drainage canals), plaintiffs' proposition would have the result of postponing the running of prescription in perpetuity. For the flooding damage will never abate until either it stops raining or the necessary repairs/modifications are made to the drainage canal to prevent the flooding.

Id. at 551. The court then affirmed the judgment granting defendant's motion for summary judgment based on prescription. Id.

In Roberts v. Murphy Oil, 577 So.2d 308 (La. Ct. App. 1991), plaintiffs alleged that when defendants constructed a new highway, plaintiffs' property suffered flooding damage as a result of defendants' altering of the existing drainage pattern. Id. at 309. In considering defendants' affirmative defense of prescription, the court similarly stated that "repeated instances of flooding caused by the negligent alteration of drainage are separate and distinct events which do not serve to interrupt prescription." Id. at 311. Again, the court affirmed the judgment granting defendants' motion for summary judgment based on prescription. Id.

The facts in the instant case are analagous. Plaintiff alleges that the negligent design and maintenance of defendant's drainage ditch and culverts have resulted in several instances of flooding of plaintiffs' property. The tortious act that ultimately resulted in the damage is alleged to be "a combination of the addition of the fourth rail line and improperly sized culverts that were installed by the Railroad in the 1980's."[11] This conduct is not recurring; it is not a series of overt, persistent and ongoing acts. In addition, the damage is caused by the instances of

---

[11] R. Doc. No. 70, p.2.

flooding, which are merely the ill effects of the original, allegedly wrongful act. See Pracht, 830 So.2d at 551; see also Crump, 737 So.2d at727 (where a canal diverting water caused injury to plaintiff's property, the court found that "[t]he continued presence of the canal and the consequent continuous diversion of water from the ox-bow are simply the continuing ill effects arising from a single tortious act.").[12]

Defendant has offered plaintiffs' deposition testimony evidencing that plaintiffs had actual knowledge, since at least the late 1970's, that there were instances of flooding on the plaintiffs' property.[13] Esta M. Delaney admitted that even from the 1960's forward, following significant rains, water would accumulate into the ditch and flow into her backyard.[14] In addition, defendant offers a letter, dated May 25, 1995, in which Esta M. Delaney complained that the culverts needed to be replaced in order to prevent future flooding.[15] Plaintiffs do not contest these factual assertions. Accordingly, since "[p]rescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage[,]" Hogg, 45 So.3d at 1003, the only claims not prescribed are those that occurred within one year prior to January 2, 2010, the date on which plaintiffs filed this action.

For the foregoing reasons,

---

[12] To the extent that plaintiff is arguing that the failure of Union Pacific to remedy the current situation is a continuing tort, Louisiana courts have rejected this argument. See e.g., Crump, 737 So.2d at 729 ("[T]he breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor."); Hogg, 45 So.3d at 1007 (rejecting the argument that the failure to contain or properly remediate the leakage constituted a continuing wrong as the failure to remediate was not the operating cause of the damage, the leakage was.). The Court finds the cases cited by plaintiffs to be distinguishable.
[13] R. Doc. No. 65-2, p.2.
[14] R. Doc. No. 65-3, p.6-7.
[15] R. Doc. No. 65-11, p.1.

**IT IS ORDERED** that the defendant's motion for partial summary judgment is **GRANTED** and plaintiffs' claims for damages caused by alleged flooding incidents that occurred before January 2, 2009 are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 4, 2011.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**